IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER JOHNSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 1:08-cv-01970-JLT<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING THE ENTRY OF JUDGMENT FOR DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF HEATHER JOHNSON<br><br>(Doc. 15) |

**BACKGROUND**

Plaintiff Heather Johnson ("Plaintiff") seeks judicial review of an administrative decision denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

**FACTS AND PRIOR PROCEEDINGS**[1]

On October 10, 2003, Plaintiff filed an application for SSI benefits under Title XVI of the Act alleging disability due to physical and mental problems. AR at 93-103. After initial denial of her request for benefits by the Agency, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on May 24, 2008, the ALJ issued a decision denying benefits. Id. at 15-26.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Id. at 26. On September 8, 2008, the Appeals Council affirmed this decision. Id. at 7-9.

Hearing Testimony

At the hearing held on March 26, 2007, (AR at 27-54), Plaintiff testified that she was born on August 30, 1982 (24 at the time of the hearing). Id. at 32. Plaintiff asserted she was a high school graduate who understood, read, and wrote in English. Id. She claimed she was in special education during her schooling, but only for math. Id. at 32.

Plaintiff stated that her only past relevant work was working part-time as a crossing guard at the Arvin Union High School in 2002. AR at 33-34. She stated that she quit that job after about one year because she didn't like standing in the heat or cold depending on the time of the year. Id. at 34. She asserted she had not worked since leaving that job. Id. Plaintiff stated she had not sought help from a vocational expert to obtain employment because she couldn't afford to do so. Id. at 47.

Plaintiff testified that she could not work because she had a "hard time dealing with people." AR at 35. She stated that she was scared to face people. Id. at 43. Plaintiff testified she had Turner's Syndrome[2] (Id. at 41) and that she weighed 245 pounds. Id. at 37. She stated she received psychological treatment at the Kern Mental Health Center going back to 2004. Id. at 36. She claimed she was analyzed by Diane Garcia, who she identified as a Marriage and Family Therapist, approximately ten times but stated she was not treated by a psychiatrist or psychologist. Id. at 37. Plaintiff contended that she had received treatment at the Sagebrush Medical Plaza for physical problems since June 2006, but couldn't remember what type of treatment she received. Id. at 38.

Plaintiff stated she was not taking any medication at the time of the hearing. AR at 40. Although she previously had been prescribed medication for her problems by her treating physician, Dr. Zorah Azadfar, she had not taken any medication since she stopped seeing Dr. Azadfar in late 2006. Id. She explained that she stopped seeing Dr. Azadfar because she didn't want to take any more medication. Id.

Plaintiff testified she lived at home with her mother and father and three siblings (aged 22,

---

[2] Defendant describes Turner's Syndrome as a "genetic condition in which a female does not have the usual pair of two X chromosomes." (Doc. 21 at 1, n. 2).

2

11, and 8). AR at 35. Both of her parents worked and supported her but she claimed she also received food stamps. Id. She stated that she babysat her little brothers when her parents were gone. Id. She stated she had no driver's license because although she attempted to take the test, she did not pass. Id. at 39. She stated that she did not attempt to retake the test after failing. Id.

Plaintiff testified that she had no social life but didn't want to explain why. AR at 42. Plaintiff further stated she depended on others and didn't believe she could handle a job. Id. at 42.

Plaintiff's adult sister, Misty Johnson, also testified. She stated that she didn't believe that Plaintiff could work. AR at 44. She related that about two-to-three years before, Plaintiff worked at a concession stand in a local mall but after only two hours she "freaked out" and quit. Id.

Misty testified that Plaintiff had no social life. AR at 45. She described Plaintiff as shy in a crowd and as someone who had trouble dealing with strangers. Id. However, she stated that Plaintiff sometimes went to the grocery store with their mother and sometimes went to Misty's house to "hang out" with Misty and her boyfriend. Id. at 46. Misty testified that on rare occasions, maybe two or three times in the last three years, Plaintiff accompanied her to a bar. Id. at 47.

A vocational expert ("VE"), Gloria Lasoff, also testified. She stated that Plaintiff had no real past relevant work. AR at 51. The ALJ then put two hypotheticals. In the first, he described a person of Plaintiff's age, education and work experience (or lack thereof) who could lift ten pounds frequently and 20 pounds occasionally, could sit/stand/walk for six hours each in an eight-hour day (light exertional work), never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs, stoop and crouch, balance, kneel and crawl, and was mentally limited to unskilled work with no close or frequent interpersonal contact with supervisors, co-workers or the general public. Id. at 51-52. The VE opined that such a person was capable of performing jobs such as an assembler, packager or agricultural products sorter. Id. at 52.

In the second hypothetical, the ALJ described the same person, but modified the exertional limitations to lifting ten pounds, sitting for six hours in an eight-hour day, and standing/walking for two hours in an eight-hour day (sedentary exertional level). AR at 52. The VE again opined that such a person could perform work in the national economy, including assembler, production inspector or cuff folder. Id. at 52-53.

Relevant Medical Evidence

Medical notes from the Kern Faculty Medical Group between December 1999 and August 2004, describe Plaintiff as suffering from Turner's Syndrome and depression. See AR at 226-35. Plaintiff was treated primarily with medication, including Zoloft, and she was encouraged to exercise and seek social interaction. Id.

In May 2004, Plaintiff was examined by Dr. John Zhang, Ph.D., a consultant for the state Department of Social Services. He noted that Plaintiff complained of having trouble being in large groups. AR at 200. Plaintiff told him that she lived with her parents and siblings. Id. at 201. She also told him that her social activities were minimal because of her "shyness." Id. Dr. Zhang also recounted Plaintiff telling him that she spent most of her time helping her mother around the house, and, although her social activities were minimal, she spent time on the internet "chatting" with friends. Id.

In his physical examination, Dr. Zhang described Plaintiff as heavily built with androgynous features consistent with Turner's syndrome, including small breasts and a broad chest. AR at 201. He characterized Plaintiff as mildly depressed, noting minimal eye contact but described her speech as normal. Id. Dr. Zhang observed that Plaintiff appeared to be of average intelligence with in-tact memory and concentration, oriented in all spheres with no hallucinations or delusions or thought disorders. Id. at 202. He diagnosed dysthymic disorder and Turner's syndrome. Id. He described her primary difficulty as "low level" depression with underdeveloped social skills. Id. He recommended supportive psychotherapy which, with effort, would likely lead to improvement. Id. Dr. Zhang opined that in her current state, Plaintiff would have mild to moderate difficulty maintaining reasonable concentration, persistence and pace in work settings. Id. He believed she was capable of managing her own funds. Id.

In June 2004, a non-examining consultant, Dr. Luyen Luu, filed a Mental Residual Functional Capacity Assessment ("RFC") for the Social Security Administration based on a review of the medical record. Dr. Luu noted that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, but was otherwise not significantly limited in her cognitive abilities. AR at 217-18. He concluded that Plaintiff could understand and remember

Case 1:08-cv-01970-JLT   Document 26   Filed 04/19/10   Page 5 of 15

simple instructions, carry out short instructions without additional support and maintain attention in two-hour increments. Id. at 221. He believed that Plaintiff could maintain socially appropriate behavior, accept instruction and respond appropriately to criticism from supervisors and interact appropriately with the general public. Id. He also believed she could adapt and respond appropriately to changes in the work setting. Id.

In April 2005, Plaintiff was examined by another state consultant, Dr. Michael Musacco, Ph.D, a licensed psychologist. Dr. Musacco recorded Plaintiff as telling him she normally awoke at 10 a.m. AR at 239. She told him she performed household chores like laundry and cooking and occasionally went grocery shopping with her mother. Id. She told him she didn't drive or ride the bus independently. Id. She told him that after dinner, she watched television and went to bed about midnight. Id. She told him she had difficulty falling and staying asleep. Id.

Dr. Musacco described Plaintiff as oriented to date and time, with fair grooming and hygiene. AR at 239. He recorded Plaintiff as 5foot, 10 inches tall and weighing 240 pounds. Id. He described her eye contact as "fleeting" and her affect as "flat." Id. She told him her mood was "okay" but stated she had occasional feelings of sadness and worthlessness stemming from being overweight. Id. She denied having any suicidal thoughts. Id.

Dr. Musacco noted no evidence of psychosis and described Plaintiff's attention, concentration and abstract reasoning skills as "in tact." AR at 240. He diagnosed anxiety disorder with social phobia and noted minimal depression which did not support a clinical diagnosis of depression. Id.

In April 2005, Dr. Luu filled out a Psychiatric Review Technique form. He noted Plaintiff as suffering from "affective disorders" and described "mild" functional limitations with respect to her daily living activities, social functioning, and her concentration, persistence and pace. AR at 252. He opined that she could perform simple, repetitive tasks. Id. at 257.

In June 2005, Plaintiff was examined by Michael St. John, who is described as a Marriage and Family Therapist. He described Plaintiff as suffering from dysthymic disorder, avoidant personality disorder, obesity, Turner's Syndrome and foot and back pain and recorded a Global

5

Assessment of Functioning ("GAF") score of 46.[3] AR at 262. He also noted "mild" depression, but opined that Plaintiff had "severe" restrictions regarding relationships, community contributions and in her physical and emotional health. Id. at 262-63.

A Mental RFC Assessment filled out by Dr. Luu in April 2005, was essentially the same as his June 2004 assessment, however, he did note that Plaintiff was "moderately limited" in her ability to interact with the public, to accept instruction and criticism from supervisors, to adapt to work place changes and to travel via public transport to unknown locations. AR at 265. Nevertheless, again Dr. Luu found that Plaintiff retained sufficient functional capacity to understand and remember short and simple tasks, maintain concentration, persistence and pace for unskilled work, interact appropriately with co-workers and accept the usual amount of supervision and adapt and take appropriate precautions in work settings. Id. at 268. Further, he believed that Plaintiff was capable of performing simple, repetitive tasks with limited public contact. Id. Dr. Archimedes Garcia, also reviewed Plaintiff's medical records and endorsed Dr. Luu's opinions. Id.

A series of medical notes by Plaintiff's treating physician, Dr. Zorah Azadfar, in 2005 and 2006 noted Plaintiff's diagnoses of Turner's Syndrome, obesity and depression and indicate treatment via Zoloft and oral contraceptives. AR at 286, 288-93. At one point, Dr. Azadfar noted that Plaintiff had no physical problems ambulating or in performing activities in her daily living. Id. at 286. However, on January 31, 2006, Plaintiff reported to Dr. Azadfar that her "mood is fine" and that "she is not depressed." AR at 280. Dr. Azadfar's examination was consistent with this. AR at 278. However, Dr. Azadfar encouraged Plaintiff to lose weight and exercise and recommended continued treatment with Zoloft. See id. At 276-81.

ALJ Findings

The ALJ evaluated Plaintiff pursuant to the customary five-step sequential evaluation. In this five-step process, the ALJ determined first that Plaintiff had not engaged in substantial gainful activity since her claimed onset date of September 24, 2003. AR at 20. Second, he found that

---

[3] A GAF score of 46 describes someone with serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shopliftng) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Impairments, 4th text revision, 2000, p. 34 ("DSM-IV).

Plaintiff had severe impairments including Turner's syndrome on hormone replacement therapy, obesity, dysthymic disorder, and anxiety disorder. Id. However, in the third step of his evaluation, the ALJ determined that these impairments, or a combination of these impairments, did not meet or exceed the level required under Agency guidelines for presumed disability. Id. at 21.

In the fourth step of his analysis, the ALJ determined that Plaintiff had the RFC to lift and carry ten pounds frequently, and 20 pounds occasionally, sit, stand and/or walk six hours each in an eight-hour workday with the following nonexertional limitations; never climbing ladders, ropes or scaffolds; occasionally stooping and crouching; occasionally balancing, kneeling or crawling; but was mentally limited to unskilled work with no close or frequent interpersonal contact with supervisors, co-workers, or the public. AR at 21-22. The ALJ noted that Plaintiff had no past relevant work (Step 4) but, based on his RFC assessment and the testimony of the VE, concluded that Plaintiff retained the ability to perform other work in the national economy (Step 5). Id. at 25 As a result, the ALJ determined that Plaintiff was not disabled as defined by the Act. Id. at 26.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] As noted, applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) had medically determinable severe impairments (Turner's syndrome on hormone replacement therapy, obesity, dysthymic disorder, and anxiety disorder) ; (3) did not have an impairment which met or equaled one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) had no past relevant work; and (5) retained the RFC to perform other work related activities. AR at 20-25. The ALJ then determined that Plaintiff was not under a "disability" as defined in the Act. Id. at 26.

Plaintiff challenges the ALJ's determination at Step 5 of the sequential evaluation process, where an individual's ability to perform work is assessed based on her RFC. In particular, she alleges that the ALJ failed to properly evaluate the opinions of state agency experts, failed to properly evaluate Plaintiff's own testimony, and failed to properly develop the medical record. (Doc. 15 at 9).

## DISCUSSION

Plaintiff raises three claims on appeal. She contends the ALJ improperly evaluated the

---

[4] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

opinions of non-examining state agency experts.   In addition, she  contends the ALJ improperly rejected her symptom testimony.   Finally, she contends that the ALJ failed to properly develop the record.

> 1.  The ALJ Properly Assessed the Medical Evidence in Concluding Plaintiff was not Disabled

Plaintiff contends that the ALJ improperly assessed the opinions of two non-examining psychiatrists, Drs. Luu and Garcia, and asserts that their opinions noted "greater limitations than those found by the ALJ." (Doc. 15 at 13).  In particular, she highlights the fact that these doctors assessed "moderate limitations" in Plaintiff's ability to understand, remember, and carry out detailed instructions, and also found moderate limitations in her ability to complete a normal workweek, interact with the general public, accept instructions and respond appropriately to criticism from supervisors and adapt to changes in the work place. (Id.)

Drs. Luu and Garcia are non-examining state agency psychiatrists who examined Plaintiff's medical records.  In June 2004, Dr. Luu filed an RFC opining that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, but in all other cognitive areas he found her not significantly limited.  AR at 217-18.  At that time, he concluded she was capable of understanding, remember, and carrying out simple instructions, maintaining attention and concentration in two hour increments, maintaining socially appropriate behavior and interacting with supervisors and the general public appropriately. Id. at 221.

Subsequently, in a Mental RFC Assessment filed in April 2005, Dr. Luu noted "moderate" limitations in Plaintiff's ability to interact with the public and accept instruction and criticism from supervisors, and moderate limitations in her ability to adapt to changes in the work place and to travel to unfamiliar areas independently via public transportation.  AR at 265.  Nevertheless, Dr. Luu found Plaintiff capable of understanding, remembering and performing short and simple tasks, performing unskilled work and maintaining attention in two hour intervals, interacting appropriately with co-workers and supervisors, and adapting to changes in the work place. Id. at 268.  He also specifically determined that Plaintiff retained the RFC to perform simple repetitive tasks with limited public contact.  Id.  Dr. Garcia reviewed Dr. Luu's opinion and the records and endorsed Dr. Luu's

9

conclusions. Id.

The ALJ accorded "significant weight" to these doctors' opinions. AR at 23. He cited their findings that despite the limitations flowing from Plaintiff's impairments, she retained the ability to perform short and simple tasks, and noted their additional findings that she retained the ability to sustain concentration and persistence for unskilled work, could maintain concentration in two-hour intervals, and was able to interact appropriately with co-workers and accept supervision, and was capable of adapting to changes in the work place. See id. These conclusions accurately reflect the findings of Drs. Luu and Garcia and, in light of the fact that these doctors ultimately concluded that Plaintiff could perform simple repetitive tasks and unskilled work, were proper characterizations of their findings. Further, the ALJ incorporated these non-exertional restrictions fully into his RFC assessment. See id. at 21-22.

In addition, the ALJ cited and discussed other medical evidence, including the opinions of examining experts, Drs. Zhang and Musacco, to support his view that Plaintiff retained the RFC to perform light work with certain non-exertional limitations. Thus, in addition to the opinions of Drs. Luu and Garcia, the ALJ cited additional medical evidence to support his findings. As such, the Court finds that the ALJ's conclusion that Plaintiff was not disabled was predicated on substantial evidence in the record.

2. The ALJ Did Not Improperly Discount Plaintiff's Symptom Testimony

Plaintiff asserts that the ALJ improperly discounted her testimony concerning the severity of her symptoms. (See Doc. 15 at 14-18).

As recounted, Plaintiff testified that she was incapable of working because she had "a hard time dealing with people." AR at 35. She stated that she had no social life and was scared to face people. Id. at 42-43. Her sister, Misty, supported this assertion by testifying that Plaintiff had tried to work at a concession stand about two-to-three years prior to the hearing but "freaked out" after a couple of hours and quit. Id. at 44. Misty described Plaintiff as shy, with no social life, and as someone who had difficulty in dealing with strangers. Id.

Unless there is affirmative evidence that the claimant is malingering, then where the record includes objective medical evidence establishing that the claimant suffers from an impairment that

could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner of Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991). In addition, general findings are insufficient, rather, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must provide "'specific, cogent reasons for the disbelief.'" Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999). Factors to be considered include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities; and (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

Upon review, the Court concludes that the ALJ cited clear and convincing reasons for discounting Plaintiff's testimony she could not work. He noted inconsistencies between her statement that she had a hard time dealing with people and the written statement submitted into evidence, from her father, Michael Johnson, that she spent her time talking on the internet. See AR at 24. Dr. Zhang also wrote that Plaintiff told him she spent her time "chatting" with friends on the internet. Id. at 201. Also, the ALJ noted Plaintiff's father's characterization of her as "lazy" in a statement he filed with the Agency. Id. at 120. These inconsistencies support the ALJ's determination to discount Plaintiff's testimony. See Fair, 885 F.2d at 603; Thomas, 278 F.3d at 958-59.

The ALJ noted that although Misty testified that Plaintiff "freaked out" while working at a concession stand a few years before, his RFC accounted for her problems in dealing with the public by restricting Plaintiff to jobs that involved limited public contact. AR at 24. The VE opined that with such a restriction, jobs were available in the economy. Id. at 52-53. Also, the ALJ noted that Plaintiff had a poor work record prior to her alleged date of onset of disability (September 24, 2003),

stating she did "virtually nothing" during the four years after her graduation from high school. Id. at 24.

In addition, the ALJ noted that Plaintiff's claims of disability were inconsistent with her daily living activities, including her babysitting of her younger brothers, her performance of chores including laundry and cooking, grocery shopping, and the amount of time she spent chatting with friends on the internet. AR at 24. Further, he noted that despite her alleged mental impairments, she had not sought treatment from a psychiatrist or psychologist and, though prescribed Zoloft for her depression, she voluntarily stopped taking the pills because she didn't like taking them. Id.

The ALJ noted also that a Marriage and Family Therapist ("MFT"), Michael St. John, interviewed Plaintiff in June 2005 and "diagnosed" her with avoidant personality disorder and dysthymic disorder. AR at 23, 260-63. However, the ALJ concluded that the MFT's findings that her "psychomotor activity," including her thought process and thought content, was unremarkable. Id. at 23, 262. This was consistent with Plaintiff's refusal to take medication and the MFT's opinion that her depression was only "minor." Id. at 262. In addition, although the MFT recommended stress management, coping skills training and additional, unspecified "psychiatric services," the ALJ noted that a registered nurse reviewed the MFT's findings a few days later and concluded that Plaintiff failed to meet the criteria for further mental health treatment. Id. at 23, 259.

Given this reasoning, the Court finds that the ALJ articulated clear and convincing reasons for discounting Plaintiff's testimony concerning her ability to work. See Fair, 885 F.2d at 603 (citing inconsistencies in daily activities and an unexplained failure to follow prescribed treatment as grounds for discounting a claimant's symptom testimony).

### 3. The ALJ Did Not Err in Failing to Seek Further Development of the Record

Plaintiff contends the ALJ erred by failing to develop the medical record. However, there is no absolute duty to develop the record in this instance. The law imposes a duty on the ALJ to develop the record in some circumstances. 20 C.F.R. §§ 404.1512(d) - (f), 416.912(d) - (f) (recognizing a duty on the agency to develop a medical history, recontact medical sources, and arrange a consultative examination if the evidence received is inadequate for a determination of disability).

For example, the ALJ has a heightened duty to develop the record in instances where the claimant is mentally ill because such claimants may not have the capacity to provide the ALJ the necessary information. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). Here, Plaintiff describes herself as "a mentally impaired individual." First, Plaintiff fails to clarify what she means by the use of this phrase and she fails to cite to any portion of the record to support this contention. Instead, Dr. Zhang determined that she Plaintiff appeared to be of average intelligence. AR at 202. Also, as recited above in Headnote 2, the evidence does not demonstrate that Plaintiff suffered from a pervasive mental illness and, in fact, her depression was described only as "minor." (AR at 262.)

On the other hand, the ALJ has a duty to develop the record further when the record before the ALJ is ambiguous or inadequate to allow for proper evaluation of the evidence. 20 C.F.R. §§ 404.1512(e) and 416.912(e); Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001). In this regard, Plaintiff asserts that certain evidence, in particular medical evidence from examinations conducted by Drs. Suresh Kumari and Bradley Engwall, were not part of the record. (See Doc. 15 at 10). Upon review, it does not appear that Plaintiff ever requested that the ALJ obtain these records nor did she make the ALJ aware that she believed that these records were needed or missing. Moreover, Plaintiff did not identify these names on her disability application or later requests for review. AR at 145-46, 170-71, 176-77, 181, 185-86, 188. Thus, Plaintiff has not demonstrated that the ALJ breached any duty to develop the record.

As Plaintiff's concedes in her Reply Brief, notes from Dr. Kumari treatment of Plaintiff, from 1999-2001 (long before the September 24, 2003 date of claimed disability) are contained in the administrative record. The records show that he treated Plaintiff for physical conditions and did not treat her for mental impairments, such as depression. See AR at 232-35.

On the other hand, Plaintiff has failed to explain how the records of Engwall would support her assertion of disability. In fact, other than to assert that records concerning this doctors should be part of the record, Plaintiff has failed to describe their substance at all. Notably, Plaintiff appears to have little idea as to their content. She asserts that because these were listed as "report(s) used to decide your claim" when her claim was initially denied, that they *may* be records from treating

physicians and argues that whether they are treating doctors should be clarified.[5]  This supposition fails to meet her burden of demonstrating error.  See Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (remand based on new evidence requires a showing of materiality that "bear[s] directly and substantially on the matter").

Plaintiff contends also that records from Kern Medical Center were not complete and claims, in particular, that they failed to include records from Dr. Azadfar.  She notes that her mother, who served as her representative during Agency proceedings, asked the ALJ to subpoena additional records because Dr. Azadfar was a treating physician.[6]  (Doc. 15 at 12); see AR at 30.  Contrary to Plaintiff's contention, the record contains numerous treatment notes detailing the care provided by Dr. Azadfar during the time period 2005 through 2006.  See AR at 282-93.  Thus, although the ALJ declined to subpoena the records, these records were obtained without the subpoena because the notes of the treatment provided by Dr. Azadfar at Kern Medical Center *are* in the record.  Therefore, Plaintiff has failed to demonstrate that the ALJ failed to develop the record in this respect.

Likewise, Plaintiff asserts that the record is "devoid of the psychiatric treatment notes from Kern Mental Health."  However, as described above, records from Kern Mental Health *are* in the administrative record. (AR 259-262.)  Thus, Plaintiff's contentions in this regard are not clear.

Moreover, the evidence in the record cited by the ALJ was not ambiguous nor has Plaintiff demonstrated it was not complete.  Moreover, there is no evidence that the ALJ's analysis was not comprehensive.  To support his findings, the ALJ discussed not just the opinions of Drs. Luu and Garcia, but also the reports from examining experts, such as Drs. Zhang and Musacco.  See AR at 22-23.  None of these professionals concluded that Plaintiff's symptoms of depression prevented her from performing work.

---

[5] The Court is at a loss to understand why Plaintiff does not know whether these doctors treated her.  If they did, simply asserting this and attaching the records would have allowed the Court to determine whether error occurred.  Instead, the Court is left only with supposition that the records may, in some manner, relate to one or more, identified physical or emotional conditions; although which one(s) is not specified.

[6] Respondent notes that Dr. Azadfar was not a licensed doctor until February 2007.  On this basis, Respondent asserts that the ALJ did not err in refusing to obtain a "medical source statement" from her.  An "acceptable medical source" includes a "Licensed physician", among other licensed professionals. 20 C.F.R. § 416.913(a)(1).  Thus, the Court agrees that Dr. Azadfar was not an acceptable medical source to provide a source statement.

  Moreover, Plaintiff was informed by the ALJ that she could provide evidence to support her claim in anticipation of her hearing. <u>See</u> AR at 72-73, 75-76.  The ALJ also outlined how she could obtain free legal assistance but Plaintiff chose to be assisted by her mother in prosecuting her claim. At no point, including in this appeal, has Plaintiff come forward with additional evidence to support her assertion that relevant medical evidence supportive of disability was not included in the record. At most, she assets that there was other, undescribed medical evidence not in the record.  This is insufficient to establish the that ALJ erred in failing to supplement the record.

## **CONCLUSION**

  For  these reasons, the Court concludes that the ALJ cited substantial evidence in the record to support his conclusion that Plaintiff could perform work and was not disabled.  In addition, he provided clear and convincing reasons for rejecting Plaintiff's symptom testimony.

  Accordingly,

1. The Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.
2. The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Heather Johnson.

IT IS SO ORDERED.

Dated:   **April 19, 2010**              **/s/ Jennifer L. Thurston**
                         UNITED STATES MAGISTRATE JUDGE